THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,　　　　　：

　　　　　　　　　　　　　　　　　　　：

　v.　　　　　　　　　　　　　　　　：　3:20-CR-189
　　　　　　　　　　　　　　　　　　　：　(JUDGE MARIANI)
CASEY VANGORDER,　　　　　　　　：

　　　　　　　　　　　　　　　　　　　：

　　　　　　　　　Defendant.　　　　：

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Casey Vangorder's *pro se* "Motion for Early

Termination of Probation" (Doc. 390), which the Court has construed as a motion for early

termination of supervised release (*see* Doc. 391). Defendant Vangorder requests therein

the termination of her three-year term of supervised release. The Government filed a Brief

in Opposition (Doc. 394) and the motion is ripe for disposition. For the reasons that follow,

Defendant Vangorder's motion will be denied.

### II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of

offenders back into the community rather than to punish them." *United States v. Murray*,

692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson,* 645 F.3d 191, 197 (3d

Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate

a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146

n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the

authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. § 3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The § 3553(a) factors cited in § 3583(e)(1) are as follows:

(1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed

2

to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted). *See also, Esteras v. United States*, 606 U.S. 185, 196 (2025) ("Supervised release . . . is not a punishment in lieu of incarceration. Rather, it fulfills rehabilitative ends and provides individuals with postconfinement assistance.") (internal citations and quotation marks omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Id*. (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

Here, pursuant to a signed plea agreement (Doc. 259), on November 7, 2023, Defendant Vangorder pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 40 grams of fentanyl. Vangorder's plea agreement included an agreement by the parties that, with respect to the application of the U.S. Sentencing

Guidelines to Defendant's conduct, the parties would recommend to the Court that

Vangorder was involved in the distribution of at least 40 grams, but less than 160 grams, of

fentanyl. (Doc. 259, ¶ 12).

Pursuant to the Pre-Sentence Report ("PSR"), to which Defendant did not object, the

offense conduct which formed the basis for Vangorder's conviction included her involvement

in a large number of transactions of fentanyl, with at least four other individuals, in a

conspiracy from January 2017 to August 2020, as detailed below:

> [Defendant] Eric Hill, was the leader of the local sect of the [street gang] "Gangsta Milla Bloods." Multiple confidential informants (CI) informed law enforcement that Eric Hill distributed fentanyl and heroin, including to an individual named Thomas Evanchick. According to the CI, Casey Vangorder, and her boyfriend, Casey Read, sold fentanyl for Eric Hill.

> Members of the Luzerne County Drug Task Force installed a pole camera near Eric Hill's residence at 135 West Main Street in Plymouth (Pennsylvania) where he lived with his girlfriend, Candacelee Ellis. Investigators observed a large amount of "short stay" foot traffic coming in and out of the residence and believed that such activity was consistent with drug trafficking.

> On July 13, 2020, investigators conducting surveillance via the pole camera outside Eric Hill's residence observed a Hyundai Genesis pull into the driveway. The driver, Casey Vangorder, entered the residence and exited a short time later. Officers followed the vehicle to Wilkes-Barre, Pennsylvania, and observed Casey Vangorder conduct a "hand-to-hand" transaction with the driver of a Mazda who was later identified. The driver of the Mazda admitted to having purchased a brick of fentanyl from Casey Vangorder during the transaction.

> On July 14, 2020, investigators observed Thomas Evanchik arrive in his vehicle at Eric Hill's residence, enter the residence, and leave a short time later. Thomas Evanchik returned to his vehicle and traveled to a parking lot on Route 11 in Larksville, Pennsylvania, where he parked. Investigators observed Thomas Evanchik engage in a "hand-to-hand" exchange with the driver of a

4

truck, later identified as Todd Houghtlin. Todd Houghtlin then resumed his travel. Investigators subsequently initiated a traffic stop on Todd Houghtlin. A "brick" (50 bags) of suspected fentanyl, packaged in green bags held together with multi- colored rubber bands, was observed on the passenger seat. Todd Houghtlin was also in possession of a Ruger LCP .380 caliber handgun, loaded with four rounds of ammunition in the magazine.

Investigators also stopped Thomas Evanchik in his vehicle. Thomas Evanchik had a "brick" (50 bags) of suspected fentanyl in his vehicle. The packaging was identical to the packaging found in Todd Houghtlin's truck. Thomas Evanchik admitted that he had obtained the two bricks of fentanyl from Candacelee Ellis and drove to the parking lot where he provided one of the bricks to Todd Houghtlin.

A CI indicated that Casey Vangorder and her boyfriend, Casey Read, distributed fentanyl for Eric Hill. The CI indicated that these individuals drove a black Hyundai Genesis.

On July 14, 2020, investigators observed Casey Vangorder arrive at Eric Hill's residence. This same day, agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and local authorities obtained and executed a search warrant of Eric Hill's residence. Investigators seized approximately 13 grams of fentanyl, $4,123, and various items used for drug packaging and trafficking.

Eric Hill and Candancelee Ellis were interviewed, and Eric Hill stated he began selling fentanyl in August 2019 and that his main customers were Thomas Evanchik, Casey Vangorder, and a woman known as "Sam" (not identified). Eric Hill stated that Casey Vangorder retrieved approximately five bricks weekly. Candacelee Ellis told investigators that Casey Vangorder is typically charged $160 to $180 per brick and was sold four bricks the day of the search warrant and two bricks the day before.

Candancelee Ellis stated that she gave Casey Vangorder a lower price if Casey Vangorder picked up four or more bricks at one time. She indicated that Casey Vangorder purchased for others in addition to herself. Candacelee Ellis stated that Casey Read and Casey VanGorder sometimes came together to pick up fentanyl.

A CI admitted that he or she had obtained fentanyl and heroin from Casey Vangorder and Casey Read since about February 2020. At first, the CI purchased a "bundle" (10 bags) but later purchased "bricks" (50 bags). By May 2020, he or she purchased two bricks weekly. A bundle cost $100 and a brick cost $300. The last time the CI purchased from the CI [*sic*] was around July 14, 2020 (the day of the search warrant at Eric Hill's residence). Casey VanGorder told the CI that her "guy," meaning supplier, "got arrested" and Casey VanGorder no longer had a supplier from whom to purchase fentanyl and heroin. The CI further advised that Casey VanGorder and Casey Read were commonly together for drug transactions, and he or she met the pair several times weekly, typically at their home.

(Doc. 365, ¶¶ 7-16).

The PSR further detailed Defendant Vangorder's lengthy history of substance abuse,

documenting that:

The defendant began using marijuana and drinking alcohol in eighth grade. Throughout high school, Casey Vangorder used non-prescribed Percocet and Xanax. Her drug use led to her withdrawing from school in tenth grade. The subject advised she continued to use her mother's prescription medications. By age 18, the defendant used heroin everyday intravenously. At most, she used one brick (50 bags) of heroin daily. The defendant has also experimented with methamphetamines.

Casey Vangorder attended inpatient substance abuse treatment at Marworth in Waverly, Pennsylvania, from June 17, 2014, to July 10, 2014. According to records, her prognosis was "poor" at the time of discharge. She was recommended to continue in outpatient treatment, which was arranged at Wyoming Valley (Pennsylvania) Drug and Alcohol Treatment Services (WVADS).

The defendant advised she had an approximate five-year period of sobriety after she completed treatment discussed above in 2014. Casey Vangorder admitted that she relapsed with heroin when her ex-boyfriend and co-defendant, Casey Read, was released from prison.

(*Id.* at ¶¶ 50-52).

6

Nonetheless, in 2020, Vangorder completed a 28-day inpatient substance abuse program and thereafter successfully completed outpatient substance abuse treatment at WVADS on March 17, 2021. (*Id.* at ¶ 53). While on pretrial services supervision, six drug screens were administered between November 2, 2020, and January 24, 2024, which were each negative. (*Id.* at ¶ 54).

On July 31, 2024, this Court sentenced Vangorder to a term of incarceration of time-served, to be followed by a term of supervised release of 36 months. (Doc. 379).[1] Having now served over one year of her supervised release, she moves for early termination of this supervision.

Upon consideration of the relevant statutory factors, early termination is not "warranted by the conduct of [Vangorder] . . . and the interest of justice", 18 U.S.C. § 3583(e)(1). Defendant's motion will thus be denied.

In support of her motion, Defendant broadly asserts that she has "[f]ully complied with all conditions of supervision", "[r]eported as directed to the United States Probation Office", "[m]aintained lawful conduct at all times", "[h]ad no violations or adverse incidents, and has "remained in good standing with Probation." (Doc. 390, at 1-2).

---

[1] Although the minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(B) was five-years, Vangorder was safety valve eligible and the sentence was therefore imposed without regard to the statutory minimum.

Notably absent from Defendant's motion is any basis for the termination of her supervised release aside from general assertions that she has "demonstrated rehabilitation and stability" and has consistently complied with the terms of her supervised release. Nor does Defendant present any evidence that "new or unforeseen circumstances" have arisen warranting the early termination of her supervised release[2] or that the supervised release is causing her any undue hardship. Even recognizing that Vangorder has purportedly fully complied with the terms of her supervised release, Defendant has simply done what is required of her. Mere compliance with the terms of her supervised release does not entitle her to early termination of the three-year term. *See e.g., United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

---

[2] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

Moreover, the nature and circumstances of the drug conspiracy in which Vangorder participated, including the length of the conspiracy, and the number of sales, and quantity, of fentanyl which she admittedly distributed, combined with her lengthy history of substance abuse since eighth-grade, weigh heavily in favor of not terminating Defendant's supervision early. Continued supervised release also provides possible deterrence to further criminal conduct, *i.e.* possession, distribution, or participation in another conspiracy to possess and/or distribute, one or more controlled substances, and in so doing, serves to aid in the protection of members of the public. Vangorder's compliance with the terms of her supervised release, including maintaining "lawful conduct" and having no "violations or adverse incidents", may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain from engaging in further unlawful behavior and to promote her recovery and rehabilitation. *See e.g. United States v. Miles*, 2020 WL 4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community."). Significantly, given Vangorder's lengthy history of addiction, remaining on supervised release ensures that she may continue to be monitored and provided, if necessary, any further needed drug and alcohol therapy.

For these reasons, and upon consideration of each of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the

9

parties' filings, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh in favor of requiring Vangorder to serve the remaining term of her supervised release. Defendant's motion will therefore be denied.[3]

### III. CONCLUSION

For the foregoing reasons, Defendant Casey Vangorder's *pro se* "Motion for Early Termination of Probation" (Doc. 390), which the Court has construed as a motion for early termination of supervised release, will be denied. A separate order follows.

Robert D. Mariani
United States District Judge

---

[3] Although the Court has closely considered each relevant factor, it does not address each factor herein. *See United States v. Sheppard*, 17 F.4th 449, 455 (3d Cir. 2021) ("A district court need not make specific findings of fact for each factor. Rather, when denying a defendant's motion for early termination of supervised release, . . . a statement that [it] has considered the statutory factors is sufficient. Additionally, Congress's inclusion of the 'expansive phrases "conduct of the defendant" and "interest of justice" [in § 3583(e)] make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.") (internal citations and quotation marks omitted).